# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RONALD H. NIPPLE,**

        Petitioner,

    -vs-                                                   **Case No. 08-C-1016**

**ANA BOATWRIGHT,**

        Respondent.

## DECISION AND ORDER

The petitioner, Ronald Nipple ("Nipple"), was charged with four counts of repeated sexual assault of the same child in Green County, Wisconsin. The victim, who was the daughter of Nipple's girlfriend at the time, was born August 11, 1982, and she bore Nipple two children. Nipple negotiated a plea with the State for the outright dismissal of the first three counts and a recommended sentence of five years probation, in exchange for a no-contest plea to Count 4 (covering the time period between August 11, 1996 and August 10, 1997). The circuit court accepted the plea, but sentenced Nipple to twenty years in prison. Nipple now petitions this Court for relief under 28 U.S.C. § 2254.

The rationale for the circuit court's sentence is compelling and helps to put this disturbing case in context:

> [The victim] doesn't have a father, single mother, residing with her mother, giving him access to the daughter, taking them out to the farm, having access there, and grooming her with assurances that the type of activity they are engaging in is activity that is appropriate because he is like her father and he

loves her and then to provide her with cattle and with horses and ultimately buying her vehicles, as the record indicates, and she indicates this was for sex.

\*\*\*

The question or another factor the court has to consider is the seriousness of the offense, and I don't know if maybe – maybe I'm losing touch. I don't know. Is anybody beside me concerned about the fact that we have a young child repeatedly sexually assaulted either from age eight by sexual contact or 15 as pled to, and I suspect that it – from her statement, which appears to be well done and Mr. Nipple said I could accept it as basis for accepting his plea, it appears that this was a long process.

Do the people of Green County approve this kind of conduct to the point that they would say it is appropriate to have this kind of action to a child over a period of time and put him on probation, give him a couple months in jail and tell him to do some community service?

Has our community of Green County taken that viewpoint on – on law and offenses of the law and offenses against members of our community? I have to think not. I have looked at the aggravating factors in this case in this action and I think the aggravating factors here, and this is why this was serious to the public, in my opinion, the sexual grooming, sexual contact, sexual intercourse with a child this young and for the period of time and under the control and manipulation and circumstances that was done.

\*\*\*

This was a very vulnerable victim, young, no father, and he was able to insinuate himself into that role and then develop the concept of the role with this child, and he did that all for the purpose of having his sexual relationship with her.

I don't think there was anything grander than that. I don't think there was anything altruistic about this. He simply had a goal, and that was the – to have a sexual relationship with this girl,

-2-

>           and he – he created all grooming, did all the things that were
>           necessary to lead to that.

After holding an evidentiary hearing, the circuit court denied Nipple's post-conviction motion, which raised several ineffective assistance of counsel claims. This ruling was affirmed on appeal, and the Supreme Court of Wisconsin denied a petition for review.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may not be granted unless the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000). This case requires analysis under the "unreasonable application" prong, which is a mixed question of law and fact. *See Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996).

A state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. This requires a habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* "To be unreasonable, the decision must not only be incorrect, but so incorrect that it lies outside of the range of reasonable conclusions." *Jones v. Wallace*, 525 F.3d 500, 503 (7th Cir. 2008); *see also Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (application is

-3-

objectively unreasonable when it lies "well outside the boundaries of permissible differences of opinion").

Nipple argues that the errors of his attorneys led to a plea that was not knowingly or voluntarily executed. To state a successful ineffective assistance of counsel claim, a defendant must show that his "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In the context of a guilty plea, the prejudice requirement is satisfied if the defendant shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Morales v. Boatwright*, — F.3d —, No. 08-1153, 2009 WL 2778238 at *5 (7th Cir. Sept. 3, 2009).

Nipple claims that his lawyers led him to believe that the joint sentencing recommendation arising from the plea agreement would be automatically adopted by the court. Nipple also claims that his attorney informed him that he would be able to withdraw his plea if the court rejected the recommended sentence. Contrary to Nipple's assertions, the circuit court repeatedly reminded Nipple during the plea colloquy that it was not obliged to accept the sentencing recommendation, and Nipple affirmed that he understood this state of affairs. The circuit court also made clear to Nipple that it was highly unlikely that he would be allowed to withdraw his plea if he was dissatisfied with the sentence he ultimately received. Consistent with these assertions, Nipple's attorneys told him that sentencing

-4-

recommendations are *usually* accepted by the sentencing court as a matter of course, but there were no guarantees. Even if this advice could be considered objectively unreasonable (it can't), Nipple's primary motivation in negotiating his plea was to avoid time in prison at all costs. Pleading to one count with a recommendation of no time in prison was less risky than going to trial on all four counts. Accordingly, Nipple cannot establish a reasonable probability that he would have rejected the plea deal and insisted on going to trial, even in the absence of his attorney's alleged deficient performance.

Nipple also argues that his attorneys rendered deficient performance by failing to investigate the victim's allegation that her statement to police detectives was coerced by a threat to arrest her and to take her children away. It appears that the victim wanted to recant her statement that the molestation started at the age of 8, and instead would testify that the molestation started at the age of 15. Nipple's attorneys did investigate this issue, but decided not to pursue it because of the credibility issues involved (not to mention the possibility that the victim could be opening herself to perjury charges). Nipple thinks his attorneys should have pursued a suppression motion, but they didn't pursue any evidentiary motions because they reached a favorable plea agreement. This was an objectively reasonable tactic.

Nipple further claims his attorney inadequately prepared for sentencing, which led to a sentence based on facts that were not encompassed by the count to which he pled guilty. Here, Nipple takes issue with the circuit court's consideration that he assaulted the victim over an extended period of time that was covered by the three dismissed counts (and partially repudiated by the victim's recantation). It is unclear what, if anything, Nipple's attorney

-5-

could have done to better prepare for sentencing in this regard. Nipple seems to imply that further investigation of the victim's claim that her statement was coerced would have yielded some fruit, but as the Court already observed, there were serious credibility issues with the victim's partial recantation.

Finally, Nipple claims that he was not aware of the consequences of his plea, and that due process entitled him to advance notice that the court was inclined to disregard the recommendation in the plea agreement. It appears that these claims were procedurally defaulted because they are not addressed by the Wisconsin Court of Appeals. To the extent they are not procedurally defaulted, these claims are without merit. Nipple was informed by the circuit court that he could be sentenced to up to 40 years in prison, and Nipple was aware that the circuit court could disregard the recommended sentence.

As for the due process/inadequate notice claim, Nipple likens his case to *Lankford v. Idaho*, 500 U.S. 110 (1991), where the Supreme Court held that the petitioner had inadequate notice that the judge might sentence him to death. The Supreme Court's holding was based on the prosecution's response to a presentencing order, where the judge asked the prosecution to formally indicate whether it intended to seek the death penalty:

> [P]etitioner does not argue that the State made a formal waiver that limited the trial judge's authority to impose the death sentence. The issue is one of adequate procedure rather than of substantive power. Conversely, the State does not argue that a sentencing hearing would be fair if the defendant and his counsel did not receive adequate notice that he might be sentenced to death. The State's argument is that the terms of the statute, plus the advice received at petitioner's arraignment, provided such notice. This argument would plainly be correct if there had *not* been a presentencing order, or if similar advice

-6-

> had been given after petitioner received the State's negative response and before the sentencing hearing commenced.

(emphasis added). Under the logic of *Lankford*, Nipple was not entitled to advance notice that the circuit court was going to disregard the sentence recommendation. Nipple was only entitled to advance notice that he could be sentenced up to the maximum penalty.

Finally, Nipple filed a motion for expansion of the record to include an affidavit from the victim claiming that the statement she gave to police was coerced. Nipple had numerous opportunities to produce this affidavit in state court, so he is foreclosed from expanding the record in federal court. *See* § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless certain requirements are satisfied); *Williams v. Taylor*, 529 U.S. 420, 435 (2000) ("a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel"). However, the victim's affidavit is ultimately irrelevant and does nothing to aid Nipple's claims. Even though this evidence was not formally introduced in state court in the form of an affidavit, the victim's partial recantation was alluded to and dealt with by the circuit court and the court of appeals. As the court of appeals noted, Nipple's conduct still would have been a crime even under the victim's subsequent version of events. Therefore, this evidence does not help Nipple's claim that he would have rejected the plea and proceeded to trial.

In the alternative, Nipple also asks the Court to stay this matter pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), so he can return to state court and make the victim's affidavit part of the state court record. Nipple is attempting to bolster his claims that were already

-7-

exhausted, so the stay and abeyance procedure in *Rhines* is inapplicable. Nipple suggests that he could go back and raise an ineffective assistance of appellate counsel claim for failure to pursue a recantation affidavit from the victim, but an appellate proceeding is not an appropriate forum to introduce newly-discovered evidence. *See Rhines*, 544 U.S. at 277 (district court would abuse its discretion if it granted a stay when the unexhausted claim is plainly meritless) (citing § 2254(b)(2)).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Nipple's motion for expansion of the record [D. 19] is **DENIED**;

2. Nipple's motion to stay [D. 22] is **DENIED**

3. Nipple's petition for a writ of habeas corpus [D. 1] is **DENIED**; and

4. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2009.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**